**ROBERT S. SOLA**
Oregon State Bar No. 844541
Robert S. Sola, P.C.
1500 SW First Avenue, Suite 800
Portland, Oregon 97201
Telephone (503) 295-6880
Facsimile (503) 243-4546
rssola@msn.com

**KELLY D. JONES**
Oregon State Bar No. 074217
The Law Office of Kelly D. Jones
Direct 503-847-4329
kellydonovanjones@gmail.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SAMANTHA JOHNSON**, | Case No. 3:19-cv-00661 |
| Plaintiff, | |
| | COMPLAINT |
| v. | |
| | (Fair Credit Reporting Act) |
| **TRANSUNION RENTAL SCREENING SOLUTIONS, INC.,** and | |
| **NATIONAL ASSOCIATION OF INDEPENDENT LANDLORDS, INC.,** | DEMAND FOR JURY TRIAL |
| Defendants. | |

COMPLAINT-Page 1

1.

The court has jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681p.

2.

Plaintiff Samantha Johnson ("Plaintiff") is an individual residing in Columbia County, Oregon and is a consumer as defined by the FCRA, § 1681a(c).

3.

Defendant TransUnion Rental Screening Solutions, Inc. ("TURSS") is a consumer reporting agency as defined by the FCRA, § 1681a(f). TURSS prepares and sells consumer reports to landlords who use the reports to decide whether to rent to persons seeking housing.

4.

Defendant National Association of Independent Landlords, Inc. ("NAIL") is a consumer reporting agency as defined by the FCRA, § 1681a(f). NAIL prepares and sells consumer reports to landlords who use the reports to decide whether to rent to persons seeking housing.

FACTS SUPPORTING CLAIMS AGAINST TURSS

5.

On or about April 9, 2018, Plaintiff applied to rent a house owned by Joshua Davis. Mr. Davis requested a consumer report on Plaintiff from TURSS to use to decide whether to rent to Plaintiff.

6.

On April 9, 2018, TURSS prepared and sold to Mr. Davis a consumer report on Plaintiff that included inaccurate information, in violation of the FCRA, § 1681e(b). TURSS falsely reported to Mr. Davis that Plaintiff was a felon who had been convicted of more than 28 crimes

including assault, theft, burglary, and sale of narcotics. None of that was true. Plaintiff is not a felon, nor has she ever been convicted of any crime.

7.

Mr. Davis told Plaintiff about the criminal information that was on her consumer report. Plaintiff told Mr. Davis that the criminal information did not belong to her. Mr. Davis told Plaintiff that he would not rent to her unless she could prove that the criminal information was not hers.

8.

In April 2018, Plaintiff contacted TURSS and told TURSS that it had issued a report to a landlord that included criminal information that did not belong to her. She requested a copy of the report. She also sent TURSS an email requesting the report.

9.

Plaintiff received a letter and a consumer report from TURSS dated April 24, 2018. The letter stated that the report contained "the contents of a consumer report generated on 4/9/2018 for Joshua Davis." That was not true. The report dated April 24, 2018 is very different than the report sent to Mr. Davis, and does not include many of the crimes listed on the report to Mr. Davis. The TURSS report dated April 24, 2018 is also inaccurate and lists six California court actions under the heading "Criminal Report" that do not belong to Plaintiff.

10.

Plaintiff again contacted TURSS and requested a copy of the report about her that TURSS sent to Mr. Davis. Eventually, in June 2018, TURSS sent Plaintiff a copy of the report about her that it sent to Mr. Davis. The report lists more than 28 criminal convictions, including several felonies, that do not belong to her.

COMPLAINT-Page 3

11.

The criminal records reported by TURSS belong to different persons than Plaintiff, some of whom have a similar name. TURSS utilizes an inadequate identification matching procedure in determining which information to put on a consumer report, which does not require a match of the full name, address, social security number, race, physical characteristics, or other identifying information that would ensure that it only reports crimes that belong to the subject of its reports. Many of the crimes it reported about Plaintiff were identified in court records with persons who had different identifying information than plaintiff including different name, different date of birth, different address, and different race.  TURSS ignores this different information. TURSS apparently does not consult readily available court records that include identifying information which would distinguish the criminal from the consumer who is the subject of the report. It uses a loose matching system that results in "mixed" consumer reports that include criminal records belonging to different persons than the subject of the report.  Such procedures are not compliant with the FCRA, which requires TURSS to follow reasonable procedures to "assure maximum possible accuracy of the information" in its reports. FCRA, § 1681e(b). These noncompliant procedures cause persons to be denied housing they should obtain, and landlords to reject persons they would welcome as tenants. These procedures also cause an enormous waste of time and resources by tenants and landlords alike.

12.

Other tenant screening agencies have faced governmental scrutiny for substantially similar activities. *See*, *e.g*., *FTC v. RealPage, Inc.*, No. 3:18-cv-2737 (N.D. Tex. Oct. 16, 2018) (FTC settlement with tenant screening agency which failed to comply with 15 U.S.C. § 1681e(b) because it used loose matching criteria to link potential tenants with criminal records).

COMPLAINT-Page 4

## FACTS SUPPORTING CLAIMS AGAINST NAIL

13.

On or about January 9, 2018, Plaintiff applied to rent an apartment at Lincoln Square managed by Lincoln Properties. Lincoln Properties requested a consumer report on Plaintiff from NAIL to use in deciding whether to rent to Plaintiff.

14.

On January 9, 2018, NAIL prepared and sold a consumer report on Plaintiff to Lincoln Properties that included inaccurate information, in violation of the FCRA, § 1681e(b). NAIL falsely reported that Plaintiff was a felon who had been convicted of more than 30 crimes including assault, theft, burglary, and sale of narcotics. None of that was true. Plaintiff is not a felon, nor has she ever been convicted of any crime.

15.

Lincoln Properties told Plaintiff about the criminal information that was on her consumer report. Plaintiff told Lincoln Properties that the criminal information did not belong to her, and she had been mixed up with another person. Plaintiff was allowed to rent the apartment.

16.

In April 2018, Plaintiff contacted NAIL and requested a copy of her file. NAIL did not provide Plaintiff with her file, in violation of the FCRA, § 1681g.

17.

Plaintiff again contacted NAIL and requested a copy of her file. On or about June 6, 2018 NAIL provided Plaintiff with a copy of her file, dated June 6, 2018.

18.

Plaintiff obtained the NAIL report provided to Lincoln Properties, dated January 9, 2018, through an employee of Lincoln Properties.

19.

The criminal records reported by NAIL belong to different persons than Plaintiff, some of whom have a similar name. NAIL utilizes an inadequate identification matching procedure in determining which information to put on a consumer report, which does not require a match of the full name, address, social security number, race, physical characteristics, or other identifying information that would ensure that it only reports crimes that belong to the subject of its reports. Many of the crimes it reported about Plaintiff were identified in court records with persons who had different identifying information than plaintiff including different name, different date of birth, different address, and different race.  NAIL ignores this different information. NAIL apparently does not consult readily available court records that include identifying information which would distinguish the criminal from the consumer who is the subject of the report. It uses a loose matching system that results in "mixed" consumer reports that include criminal records belonging to different persons than the subject of the report.  Such procedures are not compliant with the FCRA, which requires NAIL to follow reasonable procedures to "assure maximum possible accuracy of the information" in its reports. FCRA, § 1681e(b). These noncompliant procedures cause persons to be denied housing they should obtain, and landlords to reject persons they would welcome as tenants. These procedures also cause an enormous waste of time and resources by tenants and landlords alike.

20.

Other tenant screening agencies have faced governmental scrutiny for substantially similar activities. *See*, *e.g*., *FTC v. RealPage, Inc.*, No 3:18-cv-2737 (N.D. Tex. Oct. 16, 2018) (FTC settlement with tenant screening agency which failed to comply with 15 U.S.C. § 1681e(b) because it used loose matching criteria to link potential tenants with criminal records).

FIRST CLAIM FOR RELIEF

(against TURSS)

(Negligent Noncompliance with the FCRA)

21.

Plaintiff realleges and incorporates paragraphs 1 through 3 and 5 through 12.

22.

TURSS negligently failed to comply with the requirements of the FCRA.

23.

As a result of TURSS' failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

24.

Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681o(a).

SECOND CLAIM FOR RELIEF

(against TURSS)

(Willful Noncompliance with the FCRA)

25.

Plaintiff realleges and incorporates paragraphs 1 through 3 and 5 through 12.

26.

TURSS willfully failed to comply with the requirements of the FCRA.

27.

As a result of TURSS' failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

28.

Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a).

THIRD CLAIM FOR RELIEF

(against NAIL)

(Negligent Noncompliance with the FCRA)

29.

Plaintiff realleges and incorporates paragraphs 1, 2, 4, and 13 through 20.

30.

NAIL negligently failed to comply with the requirements of the FCRA.

31.

As a result of NAIL's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

32.

Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681o(a).

FOURTH CLAIM FOR RELIEF

(against NAIL)

(Willful Noncompliance with the FCRA)

33.

Plaintiff realleges and incorporates paragraphs 1, 2, 4, and 13 through 20.

34.

NAIL willfully failed to comply with the requirements of the FCRA.

35.

As a result of NAIL's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

36.

Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a).

37.

Plaintiff requests a jury trial on all claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury; and

2. Attorney fees.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury; and

3. Attorney fees.

On the Third Claim for Relief:

1. Actual damages to be determined by the jury; and

2. Attorney fees.

On the Fourth Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury; and

3. Attorney fees.

On All Claims for Relief:

1. Costs and expenses incurred in the action.

DATED this 30th day of April 2019.

                                    Respectfully submitted,

                                    s/ Robert S. Sola
                                    Robert S. Sola
                                    Robert S. Sola, P.C.
                                    Oregon State Bar No. 844541
                                    1500 SW First Avenue, Suite 800
                                    Portland, Oregon 97201
                                    Telephone (503) 295-6880
                                    Facsimile (503) 243-4546
                                    rssola@msn.com

                                    s/ Kelly D. Jones
                                    Kelly D. Jones
                                    The Law Office of Kelly D. Jones
                                    Oregon State Bar No. 074217
                                    kellydonovanjones@gmail.com

                                    Attorneys for Plaintiff